UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABA M. ABU,<br><br>      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. C14-941-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Aba M. Abu seeks review of the denial of her Supplemental Security Income application. She contends the ALJ erred by (1) finding her not fully credible; (2) improperly rejecting lay witness testimony; (3) improperly rejecting the opinions of Janet Huntington, M.D., Dr. Gerald Cavenee, Ph.D., and David Widlan, Ph.D.; and (4) failing to obtain a medical source opinion before determining if her impairments met or equaled a Listed Impairment.  Dkt. 13.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.

## BACKGROUND

Ms. Abu is currently 38 years old, has no known formal education, and no work history. Tr. 45, 67.  She is a Somali immigrant who arrived in Washington in the spring of 2010.  Tr. 262.

REPORT AND RECOMMENDATION - 1

She does not speak English, and she is illiterate in her native language.  Tr. 45.  Statements by her husband indicate they have been married for 22 years.  *See* Tr. 262.  At the time of her hearing she had six children; five live with her and her husband in the United States.  *Id*; *see also* Tr. 46.

On June 13, 2011, Ms. Abu applied for benefits, alleging disability as of June 1, 1996.  Tr. 18.  Her alleged onset date was later amended to June 13, 2011.  Tr. 43.  Her application for benefits was denied initially and on reconsideration.  Tr. 18.  The ALJ conducted a hearing on October 24, 2012; Ms. Abu testified through an interpreter.  Tr. 39.  The ALJ found Ms. Abu not disabled.  Tr. 26.  As the Appeals Council denied Ms. Abu's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found Ms. Abu had not engaged in substantial gainful activity since the amended alleged onset date; she had severe impairments of depressive disorder and a posttraumatic stress disorder (PTSD); and these impairments did not meet or equal the requirements of a listed impairment.[2]  Tr. 18-20.  The ALJ found Ms. Abu had the residual functional capacity to perform a full range of work at all exertional levels, but that she could only understand, remember, and carry out unskilled, routine and repetitive work in which English need not be written, spoken or understood.  Tr. 21.  The ALJ also found Ms. Abu could handle occasional interactions with supervisors, could not work in a team or cooperative effort, and could not engage in work that required interaction with the general public.  *Id.*  The ALJ found Ms. Abu had no relevant past work, but that she could perform jobs that exist in significant numbers in the national economy.  Tr. 24-25.  The ALJ

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

therefore concluded that Ms. Abu was not disabled.  Tr. 26.

# DISCUSSION

**A.     The ALJ Erred in Finding Ms. Abu Less Than Fully Credible**

The ALJ provided several reasons for finding Ms. Abu not credible.  Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.[3]  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

The ALJ first rejected Ms. Abu's testimony because, during her psychological evaluations, Ms. Abu presented with mental symptoms that were noticeably absent during medical appointments for "unrelated" health concerns.[4]  Tr. 22.  This reason is not supported by substantial evidence.  Contrary to the ALJ's findings, Ms. Abu's physical medical treatment notes suggest her mental impairments were evident outside of her mental evaluations.  During an appointment for back pain and headaches, Ms. Abu was described as being a "very quiet woman who does speak when spoken to, rarely makes eye contact," and who had depression, anxiety, and "obvious low mood."  Tr. 314.  On the few occasions Ms. Abu's treatment notes indicated

---

[3] The Commissioner asserts the Social Security Administration's ("Agency") rules at most require substantial evidence, "which requires affirmance of an agency's factual findings unless the evidence 'compels a contrary result.'" Dkt. 14 at 2 (*citing Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003)).  This position is foreclosed as contrary to Ninth Circuit precedent.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014) (rejecting Agency's argument that the Court should apply a standard lower than clear and convincing in reviewing ALJ's evaluation of claimant's testimony where there was no evidence of malingering).  Nevertheless, as discussed below, the ALJ erred because her findings are not supported by substantial evidence; the evidence also "compels a contrary result."

[4] The ALJ also insinuated Ms. Abu's mental symptoms appeared exacerbated in the presence of her husband.  Tr. 22.

REPORT AND RECOMMENDATION - 3

she made eye contact or smiled, her doctor also indicated she exhibited low mood.  Tr. 308, 310.  In January 2012, Ms. Abu's provider noted she was "rolling [her] head from side to side," did not make eye contact, seemed distracted, and was not focused unless spoken to directly.  Tr. 351-52.  One provider noted Ms. Abu was stressed and cried during most of her interview.  Tr. 305.  On at least one occasion, Ms. Abu reported having trouble with her memory.  Tr. 271.  She was noted to have difficulties in basic communication.[5]  In January 2012, her doctor opined her mental health problems were worsening.  Tr. 352.

      The ALJ also rejected Ms. Abu's testimony because, despite reports she was unable to care for her children, her medical record indicated she cared for them "at least to some degree."  Tr. 23.  In fact, the record indicates Ms. Abu's providers were concerned about her ability to care for her children.  In August 2010, Ms. Abu's doctor noted "it does seem unsafe to have her solely responsible for childcare."  Tr. 315.  Over a year later, the same doctor indicated Ms. Abu was "not currently capable of supervising children."  Tr. 348; *see also* Tr. 345.  In February 2012, Ms. Abu was described by a provider as "sometimes attending to the two children . . . sometimes seems to be looking off in space."  Tr. 345.  In April 2012, Ms. Abu was reported to disbelieve her doctor's opinion that she had had a miscarriage, and she "elected to continue expectant management" for approximately two months.  Tr. 330.  At that time, she explained that she believed her pregnancy was still viable because fetuses do not develop until four to five months after conception.  Tr. 335; *see also* Tr. 339.[6]  These notes and observations are absent

---

[5] The same is true whether her husband was absent or present.  In fact, one of the three mental evaluations makes no mention of Ms. Abu's husband's presence, demonstrating the ALJ had no basis to presume Ms. Abu's mental symptoms were less severe in her husband's absence.  *See* Tr. 250-52.

[6] The ALJ also found that reports of "attending school and going about the community" suggested she was "capable of some degree of social functioning."  *Id.*  In light of the entire—albeit brief—diagnostic record, the ALJ's reliance on a single note suggesting Ms. Abu had been

REPORT AND RECOMMENDATION - 4

from the ALJ's discussion.

Finally, the ALJ rejected Ms. Abu's testimony because her mental symptoms were in part due to situational factors; namely, concerns regarding her children. *Id.* The ALJ merely concluded, without explaining, that because Ms. Abu was concerned about her children and at least one miscarriage, her mental symptoms should be attributed to those concerns. Tr. 23. This reason is also not supported by substantial evidence.

The ALJ supported her adverse credibility determination with evidence that was clearly selective, and thus, insufficient. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (ALJ improperly "developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and] paraphrasing of record material [such that it] is not entirely accurate regarding the content or tone of the record."); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  On remand, the ALJ should reevaluate Ms. Abu's credibility.

**B.     The ALJ Erred in Evaluating the Lay Witness Statement of Ms. Abu's Husband**

The ALJ gave "little weight" to Mr. Ahmed's third-party function report, "given the credibility concerns raised by the contrasting presentation shown by the claimant when she met with medical providers versus evaluators." Tr. 24. Because the ALJ erred in Ms. Abu's adverse credibility determination, the ALJ failed to provide a valid reason for rejecting Mr. Ahmed's statement. *See* 20 C.F.R. § 416.913(d); SSR 06-03p; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may reject testimony of non-medical source if she provides reasons germane to

---

taking English classes and "traveling with her children in the community" as evidence that she was socially functional is disingenuous. *See* Tr. 23 (*citing* Tr. 300); *see Holohan v. Massanari*, 246 F.3d 1195, 1205, 1208 (9th Cir. 2001) (treatment records must be viewed in the context of the overall record).  This is particularly true where the same record also indicates Ms. Abu's husband told the provider she "gets lost if she travels by herself sometimes." Tr. 300.

that witness). Remand is also warranted on this issue.

**C.     The ALJ Erred in Rejecting the Medical Opinion Evidence**

An ALJ must provide "clear and convincing" reasons supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, the ALJ rejected each opinion provided by Ms. Abu's treating and examining doctors and adopted nothing,[7] giving every indication the ALJ simply substituted her own opinions for those of the medical sources. *See* Tr. 23-24. Each of the ALJ's reasons for rejecting the medical opinions was either not supported by the record, or resulted from conclusions improperly drawn from an inadequate and underdeveloped record.

     **1.     *Janet Huntington, M.D.***

The ALJ first rejected Dr. Janet Huntington's opinion because she had a "brief treatment history" with Ms. Abu. Tr. 23. Dr. Huntington treated Ms. Abu on two occasions before she issued her DSHS disability evaluation. Tr. 314, 316. The doctor opined Ms. Abu suffered from major depression, resulting in poor concentration and trouble with her memory, difficulty interacting with others, and difficulty participating in activities. Tr. 250. She also opined Ms. Abu's condition would limit her ability to work for six months. Tr. 251. In this context, where the ALJ appears to have supported her conclusions with her own opinions, the Court can discern no reason for rejecting the opinion that is clear and convincing or specific and legitimate.

The ALJ also rejected Dr. Huntington's opinion because Ms. Abu reported improved

---

[7] The ALJ fails to discuss two opinions from state agency consultants. *See* Tr. 67-72; 75-81.

mood "with taking medication." Tr. 23 (*citing* Tr. 310). Nothing in the record the ALJ cites suggests Ms. Abu's mood improved as a result of medication; thus, this reason is not supported by the evidence. *See* Tr. 310. Finally, the ALJ rejected Dr. Huntington's opinion because she indicated depression would limit Ms. Abu's ability to work for only 6 months. Tr. 23. The Court agrees that this portion of Dr. Huntington's opinion lacks explanation and is potentially incongruent with the remainder of the opinion. Ms. Abu contends the doctor's temporal limitation was a response to the fact that Ms. Abu's depression was untreated at this stage in her treatment. Dkt. 13 at 9; *see also* Tr. 250-51 (noting Ms. Abu's depression required treatment). The Court finds the explanation plausible but declines to decide the matter on this underdeveloped record.

### 2. *Gerald Cavenee, Ph.D.*

Ms. Abu also challenges the ALJ's rejection of the opinion of Dr. Gerald Cavenee. In March 2011, Dr. Cavenee evaluated Ms. Abu and observed that she was unable to communicate, kept her head down, and spoke very little. Tr. 255. Dr. Cavenee opined Ms. Abu's cognitive and social abilities were severely impaired. Tr. 256. Dr. Cavenee diagnosed PTSD, and opined vocational training would not minimize or eliminate barriers to employment. Tr. 255, 257. The doctor further opined Ms. Abu would be severely impaired for a minimum of twelve months. Tr. 257. Dr. Cavenee also noted Ms. Abu's Mini Mental Status Examination ("MMSE") was not valid because she could not or would not answer some questions and was unable to complete the exam due to language and literacy issues. Tr. 258. Nevertheless, he noted Ms. Abu had very poor orientation. *Id.*

The ALJ rejected Dr. Cavenee's opinion because it was based on Mr. Ahmed's reports, which the ALJ found not credible. Tr. 23. An ALJ "may reject a [] physician's opinion if it is

based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  As the Court has already rejected the ALJ's findings regarding credibility, this reason is invalid.  However, the ALJ also rejected the opinion because Dr. Cavenee "did not have the benefit of a record review," and because Ms. Abu's inability to perform the MMSE was "secondary to language barriers, not necessarily a medical impairment."  Tr. 24.  This conclusion is demonstrative of the fact that Ms. Abu's medical record was so insufficient as to create ambiguities regarding whether her presentation was due to mental impairments or communication barriers.

       **3.**     ***David Widlan, Ph.D.***

Finally, Ms. Abu challenges the ALJ's rejection of Dr. David Widlan's opinion.  In August 2011, Dr. Widlan evaluated Ms. Abu and noted she provided "minimal information" when questioned.  Tr. 261.  When asked if she had suffered from childhood trauma, her husband stated "'I request she does not answer this question.'"[8]  *Id.*  Even so, Dr. Widlan believed Ms. Abu would likely not have been able to provide much information "given her presentation."  *Id.*  Ms. Abu was unable to complete the Mental Status Examination ("MSE") because she did not know her birth date; her age; or the date, year, or her location.  *Id.*  Ms. Abu's husband provided the remainder of the information gathered during her clinical interview.  Dr. Widlan noted Ms. Abu exhibited "significant psychomotor retardation" and minimal eye contact, and her affect was "highly flattened."  Tr. 262.  She had "poverty of thought" and was unable to count to ten.  Tr. 263.  She had "obvious deficits in insight."  *Id.*  She was unable to complete the simple three-step task of taking a tissue, tearing it in half, and placing it on the table.  *Id.*  Dr. Widlan

---

[8] Mr. Ahmed indicated Ms. Abu becomes quite upset when asked questions about past trauma, and that her symptoms began after she witnessed her family being killed by militia in Somalia.  Tr. 261.

1  diagnosed PTSD, depressive disorder, and cognitive disorder. Tr. 264.

2      The ALJ rejected Dr. Widlan's opinion because it relied heavily on Mr. Ahmed's report and
3  on Ms. Abu's inability to complete an MSE, and because Ms. Abu's "presentation" during the
4  evaluation differed in her husband's presence. Tr. 24. The Court has already rejected these reasons
5  as invalid.

6      At this time the Court finds it must discuss a glaring deficiency in this case that the
7  parties have not addressed. The Court has already acknowledged the fact that Ms. Abu's record
8  is sparse, and at times, ambiguous; the record suggests Ms. Abu immigrated to this country fewer
9  than three years before her administrative hearing. In this context, if Ms. Abu's record was
10 difficult to evaluate due to language or cultural barriers, because the medical evidence was not
11 clear, or because the ALJ found Mr. Abu's accounts unbelievable, the ALJ was obligated to
12 further develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.2001) ("the
13 ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or
14 when the record is inadequate to allow for proper evaluation of the evidence."). This is true even
15 when the claimant is represented by counsel. *Id*. at 459. Here, as the record was clearly
16 inadequate to allow for proper evaluation of the evidence, the ALJ erred in concluding Ms. Abu
17 was not disabled. On remand, the ALJ shall further develop the record as necessary for proper
18 evaluation of the evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ
19 may "discharge this duty [to develop the record] in several ways, including: subpoenaing the
20 claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing,
21 or keeping the record open after the hearing to allow supplementation of the record.").
22 Additionally, the ALJ shall reevaluate the medical opinion evidence; Ms. Abu's RFC, and steps
23 Abu (, four, and five of the five-step evaluation process.

REPORT AND RECOMMENDATION - 9

### E. The ALJ Should Reevaluate Step Three

Ms. Abu argues the ALJ "should have obtained an opinion from a medical source before determining if Plaintiff's impairments met or equaled a Listed Impairment." Dkt. 13 at 14. As the Court understands the argument, Ms. Abu asserts the ALJ must have erred at step three because the state agency consultants opined that the evidence was insufficient to establish the existence of a mental impairment (*i.e.*, the ALJ considered no state agency medical consultant opinion on the issue of whether her mental impairments met or equaled a listing); but the ALJ independently concluded at step two that Ms. Abu had severe mental impairments. Dkt. 13 at 12-15 (stating "[t]he ALJ was not qualified to make these [step three] findings on her own.").

As the Court has already determined that remand to develop the record is in order, the Court finds that there is at least a potential likelihood that additional medical evidence would change the consultants' findings. Thus, on remand, after further developing the record, the ALJ shall obtain an updated opinion as to medical equivalence and reevaluate step three of the five-step evaluation process. *See* 20 C.F.R. § 416.926; Social Security Ruling 96-6p.

Finally, because outstanding issues must be resolved before a determination of disability can be made, the Court declines to adopt Ms. Abu's request for a remand for payment of benefits.[9]

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

---

[9] The Court may remand for an award of benefits where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

On remand, the ALJ should conduct a *de novo* hearing and (1) reevaluate Ms. Abu's credibility; (2) more fully develop the record with the assistance of medical experts; (3) reevaluate the medical opinion evidence and the lay witness testimony; (4) obtain an updated medical opinion from a medical expert addressing whether Ms. Abu's impairments meet or equal a listed impairment; and (5) reevaluate Ms. Abu's RFC and steps two through five of the five-step evaluation process.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **November 28, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **December 1, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 17th day of November, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11